2014-1729

# United States Court of Appeals
# For the Federal Circuit

———

## SMITH & NEPHEW, INC. and
## JOHN O. HAYHURST, M.D.,

PLAINTIFFS-APPELLEES,

*v*.

## ARTHREX, INC.,

DEFENDANT-APPELLANT.

———

Appeal from the United States District Court for the District of Oregon
in case no. 04-CV-0029, Judge Michael W. Mosman.

———

## BRIEF FOR PLAINTIFFS-APPELLEES
## SMITH & NEPHEW, INC.
## and JOHN O. HAYHURST, M.D.

———

JOHN M. SKENYON
MARK J. HEBERT *(of counsel)*
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02110-1878
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

*Attorneys for Plaintiffs-Appellees*

# CERTIFICATE OF INTEREST

Counsel for the Plaintiffs-Appellees, Smith & Nephew, Incorporated and John O. Hayhurst, M.D., certifies the following:

1.   The full name of every party represented by me is:

Smith & Nephew, Inc.
John O. Hayhurst, M.D.

2.   The names of the real parties in interest represented by me are:

Smith & Nephew, Inc.
John O. Hayhurst, M.D.

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the corporate party represented by me are:

Smith & Nephew Holdings, Inc.
Smith & Nephew Consolidated, Inc.
Smith & Nephew Management B.V.
Smith & Nephew USD Limited
TP Limited
Smith & Nephew (Overseas) Limited
Smith & Nephew plc

4.   The names of all law firms and the partners or associates that have ever appeared for the parties now represented by me in the trial court or are expected to appear in this court are:

John M. Skenyon
Mark J. Hebert
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210-1878
Tel.:  (617) 542-5070

i

Gregory R. Booker
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Tel.:  (302) 652-5070

Susan D. Pitchford
Brenna K. Legaard (no longer with firm)
Julianne Ross Davis (no longer with firm)
CHERNOFF, VILHAUER, MCCLUNG & STENZEL, LLP
1600 ODS Tower
601 S.W. Second Avenue
Portland, OR  97204-3157
Tel.:  (503) 227-5631

Benjamin D. Enerson (no longer with firm)
Thomas M. Johnston (no longer with firm)
HOLLAND & KNIGHT LLP
10 St. James Street, 11th Floor
Boston, MA  02116
Tel.:  (617) 523-2700


Dated:  October 3, 2014          /s/ *John M. Skenyon*_____
                                John M. Skenyon, Esq.
                                Counsel for Plaintiffs-Appellees

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................ i

TABLE OF CONTENTS .................................................................. iii

TABLE OF AUTHORITIES ............................................................ vi

STATEMENT OF RELATED CASES ............................................... xi

RESTATEMENT OF THE APPEAL ISSUES ..................................... 1

RESTATEMENT OF THE CASE SETTING OUT FACTS
RELEVANT TO THE ISSUES ........................................................ 2

I.      Introduction ....................................................................... 2

II.     The Nature Of The Invention ........................................... 4

III.    Procedural History ............................................................ 7

    A.    The First Trial In 2007 ................................................. 7

    B.    The Second Trial In 2008 ............................................ 15

    C.    The First Appeal Decided In 2009 (*S&N I*) ................. 19

    D.    The Third Trial In 2011 ............................................... 21

    E.    The Second Appeal Decided In 2013 (*S&N II*) ........... 25

    F.    The Third Appeal Filed In 2013 (*S&N III*) ................. 26

    G.    The Fourth Appeal Filed In 2014 (*S&N IV*) .............. 26

SUMMARY OF THE ARGUMENT ................................................ 28

ARGUMENT .............................................................................. 31

I.  Standard of Review ...................................................................31

II.  The District Court Did Not Abuse Its Discretion In Denying
    Arthrex's Motion Under Rule 60(b)(6) To Reopen The Judgment .........32

    A.  Rule 60(b)(6) Does Not Apply If The New Change In Law Does
        Involve A Change In The Law Underlying The Judgment.............32

    B.  The *On Demand* Case Was Not The Law As To Direct
        Infringement For The First Trial ......................................35

    C.  Other Factors Do Not Support Reopening The Judgment
        Under Rule 60(b)(6) ........................................................41

        1.  Arthrex Was Not Diligent....................................................41

        2.  Arthrex Has Not Shown An "Interest In Finality" ..............42

        3.  The Fact That The Judgment Is For Significant Damages
            Is Not A Factor Under Rule 60(b)(6)...................................43

III.  Arthrex Improperly Attempts To Use This Appeal To Re-Argue The
     District Court's Waiver Ruling  ................................................44

    A.  Arthrex's Argument Was Implicitly Decided Against It In The
        First Appeal (*S&N I*) .......................................................45

    B.  Arthrex's Argument Was Expressly Decided Against It In The
        Second Appeal (*S&N II*) .................................................48

    C.  The District Court Did Not Abuse Its Discretion In Ruling That
        Arthrex Had Waived Its Divided Infringement Defense For
        Failing To Timely Raise It ..............................................50

IV.    Arthrex Is Not Entitled To A Judgment Of Non-Infringement.................55

    A.    The Ninth Circuit Does Not Permit Rule 60(b)(6) To Be Used
          To Attack The Underlying Judgment.............................................55

          1.    The District Court's Construction Of The "Attaching"
                Limitation Cannot Be Attacked Now ..................................55

          2.    Arthrex Cannot Attack The Judgment By Relying On
                New Evidence That Was Never Before The Jury.................58

CONCLUSION ....................................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
629 F.3d 1311 (Fed. Cir. 2010) ....................................................................38

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
692 F.3d 1301 (Fed. Cir. 2012) ............................................................28, 39

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008) ................................................ 31, 39, 45, 48

*BMC Resources, Inc. v. Paymentech, L.P.*,
498 F.3d 1373 (Fed. Cir. 2007) .......................... 16, 17, 23, 30, 37, 38, 42, 53

*Broadcom Corp. v. Qualcomm, Inc.*,
543 F.3d 683 (Fed. Cir. 2008) .....................................................................56

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
576 F.3d 1348 (Fed. Cir. 2009) ...................................................................44

*Caudle v. Bristow Optical, Inc.*,
224 F.3d 1014 (9th Cir. 2000) .....................................................................31

*Cook v. Ryan,*
688 F.3d 598 (9th Cir. 2012) .......................................................................33

*Cross Medical Prods. v. Medtronic Sofamor Danek,*
424 F.3d 1293 (Fed. Cir. 2005) ...................................................................35

*Cross v. Benedetti,*
2012 WL 3252863 (D. Nev. Aug. 7, 2012)...................................................34

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
363 F.3d 1263 (Fed. Cir. 2004) ..............................................................7, 35

*Federal Savings and Loan Insurance Corporation v.*
*Gemini Management,* 921 F.2d 241 (9th Cir. 1990) ......................................31

vi

*Flores v. Arizona*,
    516 F.3d 1140 (9th Cir. 2008) ........................................................32

*Floyd v. Laws*,
    929 F.2d 1390 (Fed. Cir. 1991) ......................................................55

*Fromson v. Advance Offset Plate, Inc.*,
    720 F.2d 1565 (Fed. Cir. 1983) .................................7, 35, 38, 51

*Gonzalez v. Crosby*,
    545 U.S. 524 (2005)........................................................32, 41, 42

*Graham v. AT&T Mobility, LLC*,
    247 Fed. Appx. 26 (7th Cir. 2007) ................................................34

*Hill v. Blind Industries and Services of Maryland*,
    179 F.3d 754 (9th Cir. 1999) .........................................................50

*In re Brown*,
    2013 WL 6511979 (9th Cir. BAP 2013) .......................................34

*In re Frontier Properties, Inc.*,
    979 F.2d 1358 (9th Cir. 1992) .......................................................31

*In re King*,
    801 F.2d 1324 (Fed. Cir. 1986) ....................................................57

*InTouch Technologies, Inc. v. VGO Communications, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014) ..............................................24, 39

*Jones v. Ryan*,
    733 F.3d 825 (9th Cir. 2013) ...................................................33, 43

*Joy Tech., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) ...........................................................35

*Knapp v. Ernst & Whinney*,
    90 F.3d 1431 (9th Cir. 1996) .........................................................52

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    134 S.Ct. 2111 (2014)........................ 1, 3, 4, 26, 28, 33, 34, 35, 36
                                                                40, 41, 42, 44

vii

*Lopez v. Ryan*,
    678 F.3d 1131 (9th Cir. 2012) ........................................................42

*Los Angeles News Service v. Reuters Television International, Ltd.*,
    149 F.3d 987 (9th Cir. 1998) ........................................................32

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) ...............................................38, 40

*On Demand Machine Corp. v. Ingram Industries, Inc.*,
    442 F.3d 1331 (Fed. Cir. 2006) ................................ 29, 30, 35, 36, 37, 38, 40
                                  45, 50, 51, 52, 53

*Phelps v. Alameida*,
    569 F.3d 1120 (9th Cir. 2009) ...........................................33, 34, 41

*Pierce Packing Co. v. John Morrell & Co.*,
    633 F.2d 1362 (9th Cir. 1980) ........................................................52

*RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*,
    326 F.3d 1255 (Fed. Cir. 2003) ........................................................35

*Respironics, Inc. v. Invacare Corp.*,
    437 Fed. Appx. 917 (Fed. Cir. 2011).............................................57

*Retractable Technologies, Inc. v. Becton, Dickinson and Company*,
    757 F.3d 1366 (Fed. Cir. 2014) ........................................................44

*S.E.C. v. Platforms Wireless International Corp.*,
    617 F.3d 1072 (9th Cir. 2010) ...............................................32, 47

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
    511 F. Supp. 2d 1046 (D. Or. 2007) ................................................9

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
    355 Fed. Appx. 384 (Fed. Cir. 2009)..........................................2, 3

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
    2010 WL 3467454 (D. Or. Aug. 30, 2010), .................................21

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
    502 Fed. Appx. 945 (Fed. Cir. 2013).............. 2, 4, 5, 6, 24, 25, 40, 43, 44, 48

*South Corp. v. United States*,
  690 F.2d 1368 (Fed. Cir. 1982) (*en banc*) ....................................37

*Standard Havens Prods. v. Gencor Indus.*,
  897 F.2d 511 (Fed. Cir. 1990) ........................................................19

*TecSec, Inc. v. Int'l Business Machines Corp.*,
  731 F.3d 1336 (Fed. Cir. 2013) ......................................................49

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling
  USA, Inc.*, 699 F.3d 1340 (Fed. Cir. 2012)...................................47

*United States v. Johnson*,
  67 F.3d 200 (9th Cir. 1995) ...........................................................31

*United States v. Soto-Valdez*,
  2013 WL 5297142 (D. Ariz. 2013) ...............................................34

## Rules and Statutes

35 U.S.C. § 271(b) ...............................................................................7

35 U.S.C. § 271(c) ...............................................................................7

F.R.A.P. 28(j)......................................................................................40

Fed. Cir. R. 28(i) ................................................................................40

Federal Circuit Rule 36.......................................................................49

Fed. Rule Civ. P. 60(b) ................................................ 22, 30, 31, 32, 50, 55

Fed. Rule Civ. P. 60(b)(5)....................................................................3

Fed. Rule Civ. P. 60(b)(6)...................... 1, 3, 4, 26, 28, 31, 32, 33, 34, 35, 40, 41
                                           42, 43, 44, 48, 55, 57, 58

**Other Authorities**

Nathaniel Grow, *Joint Patent Infringement Following Akamai*,
     51 Am. Bus. L.J. 71, 84 (2014) .......................................................................37

*Wright & Miller*, Federal Practice and Procedure §2803 ...................................50

## STATEMENT OF RELATED CASES

There were two previous appeals to this Court in this patent case, and a third appeal is now pending.

In the first appeal, this Court affirmed the district court's dismissal of the Defendant-Appellant's ("Arthrex's") invalidity defenses, but it remanded the case for a new trial on infringement, *Smith & Nephew, Inc. v. Arthrex, Inc.,* 355 Fed. Appx. 384 (Fed. Cir. 2009) (Judges Bryson, Clevenger, Dyk).

In the second appeal, this Court reversed the district court's granting of JMOL of non-infringement after the new trial and ordered the jury's verdict of infringement reinstated, *Smith & Nephew, Inc. v. Arthrex, Inc.,* 502 Fed. Appx. 945 (Fed. Cir. 2013) (Judges Lourie, Clevenger, Wallach).

In the third and still pending appeal, Arthrex seeks reinstatement of its invalidity defenses decided in the first appeal and a reduction in the damages awarded by the jury and by the district court in connection with the new trial after the second appeal, *Smith & Nephew, Inc. v. Arthrex, Inc.,* App. Nos. 2014-1691, -1694, ("*S&N III*").  On August 29, 2014, this Court granted Arthrex's unopposed motion to have the third appeal and this fourth appeal treated as companion cases for oral argument (Doc. 13).

There was also an earlier appeal in a different case involving the same patent-in-suit.  In that appeal, this Court affirmed the construction of the claim limitation which is a focus of the third appeal here, *Smith & Nephew, Inc. v. Ethicon, Inc.,* 276 F.3d 1304 (Fed. Cir. 2001) (Judges Newman, Michel, Gajarsa).

Three other lower court cases are pending, which would be affected by the outcome of the two pending appeals.

A second infringement case involving the same parties and the same patent-in-suit is pending in the same district court, *Smith & Nephew, Inc. and John O. Hayhurst, M.D. v. Arthrex, Inc.*, CV08-714-MO (D. Or.).  It involves new versions of the products found to infringe in this case.

After the U.S. District Court for the District of Oregon entered judgment on September 12, 2013 based on this Court's mandate in the second appeal, Plaintiffs-Appellees (collectively "Smith & Nephew") registered that judgment in Florida state court, *Smith & Nephew, Inc. and John O. Hayhurst, M.D. v. Arthrex, Inc.*, No. 13-CA-003115 (Fla. Collier County Ct., filed November 15, 2013).  Shortly thereafter, Arthrex filed a separate suit in Florida state court to prevent enforcement of that judgment, *Arthrex, Inc. v. Smith & Nephew, Inc. and John O. Hayhurst, M.D.,* No. 13-CA-003365 (Fla. Collier County Ct., filed

Dec. 12, 2013).  Both Florida actions have been stayed pending the outcome of the third appeal.

Other than these three related cases, no other case is known to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeals here.

## RESTATEMENT OF THE APPEAL ISSUES

1.      Whether the district court abused its discretion in denying Arthrex's Rule 60(b)(6) motion to reopen the judgment of infringement as to Arthrex's SutureTak anchors based on the law of direct infringement set forth by the Supreme Court in its recent decision in *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S.Ct. 2111 (2014), when the infringement verdict and resulting judgment was based on exactly the same law of direct infringement as set forth in *Limelight*.

2.      Whether the district court abused its discretion in 2008 in ruling that Arthrex had waived any defense to direct infringement based on multiple parties for failing to timely raise it, which issue this Court implicitly decided against Arthrex in the first appeal in this case, and which issue this Court expressly found to be "without merit" in the second appeal in this case.

1

## RESTATEMENT OF THE CASE SETTING OUT FACTS RELEVANT TO THE ISSUES

### I.    Introduction

On January 12, 2004, Dr. John O. Hayhurst and his licensee, Smith & Nephew, Inc., the Plaintiffs-Appellees, (collectively hereinafter "Smith & Nephew"), brought suit in the U.S. District Court for the District of Oregon against the Defendant-Appellant, Arthrex, Inc. (hereinafter "Arthrex"), for indirect infringement of claims 1 to 7 of Dr. Hayhurst's U.S. Patent No. 5,601,557 ("the '557 patent") (A146-155; A750-62).  The '557 patent has now expired.

There have been three jury trials in this case, and two completed appeals to this Court.  In the first appeal, this Court affirmed the district court's dismissal of Arthrex's invalidity defenses, but it remanded for a new trial on infringement, *Smith & Nephew, Inc. v. Arthrex, Inc.,* 355 Fed. Appx. 384, 389 (Fed. Cir. 2009) ("*S&N I*").  In the second appeal, this Court reversed the district court's granting of JMOL of non-infringement after the re-trial on infringement, and it ordered reinstatement of the jury's verdict of direct and indirect infringement, *Smith & Nephew, Inc. v. Arthrex, Inc.,* 502 Fed. Appx. 945, 950 (Fed. Cir. 2013) ("*S&N II*").

2

Upon remand from the second appeal, Arthrex filed a series of motions, including two motions under Rule 60(b)(5) and (6) of the Federal Rules of Civil Procedure, seeking to reopen the judgment as to its invalidity defenses decided by this Court in the first appeal (A34178; A33807) (*see S&N I* at 387-89).  All of Arthrex's motions were denied (A36221-2), and judgment was entered on September 12, 2013 (A36226-7).  Arthrex then filed a third appeal to this Court, which is pending, *Smith & Nephew, Inc. v. Arthrex, Inc.,* App. Nos. 2014-1691, -1694 ("*S&N III*").

While awaiting oral argument in the third appeal, Arthrex filed another Rule 60(b)(6) motion in the district court, seeking to reopen the infringement judgment, based on its contention that the Supreme Court's June, 2014 decision in *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S.Ct. 2111 (2014) amounted to a change in the law of direct infringement that not only required the infringement judgment to be reopened but that somehow "resurrected" Arthrex's defense alleging direct infringement by multiple parties (Arthrex's "divided infringement" defense), which defense the district court ruled in 2008 and in 2010 that Arthrex had waived for failing to timely assert it.  The district court denied Arthrex's Rule 60(b)(6) motion without opinion (A1-2), and Arthrex filed this fourth appeal (A36664-5) (*"S&N IV"*).

3

The September 12, 2013 infringement judgment Arthrex seeks to reopen in this appeal, however, was based on a jury verdict where the jury was instructed as to the law requiring direct infringement by a single entity, exactly as in the Supreme Court's recent decision in *Limelight*. Thus, the judgment was not based on any law changed by the *Limelight* decision.

As for the district court's ruling that Arthrex had waived its divided infringement defense, this is the third time Arthrex has argued the issue before this Court. While this Court never wrote any opinion on this issue in either of the first two appeals, it implicitly decided the issue against Arthrex in the first appeal, and it expressly dismissed it as "without merit" in the second appeal (*S&N II* at 950). In each case, this Court was quite correct in concluding that the district court did not abuse its discretion in ruling that Arthrex had waived this defense.

Accordingly, Arthrex's fourth appeal is without merit, and the district court's denial of Arthrex's latest Rule 60(b)(6) motion should be affirmed.

## II.     The Nature Of The Invention

The invention is more fully described in *S&N III* in Smith & Nephew's Main Brief (Red Brief at pp. 7-9).

4

In general, to provide some context here, Dr. Hayhurst's suture anchor is a tiny device that an orthopedic surgeon can press into a smaller hole drilled into a patient's bone during surgery.  When inserted into the smaller hole in the hard outer bone, the resilient anchor compresses slightly.  When the anchor gets below the thin layer of hard outer bone, it expands outwardly due to its resilience, pushing against the softer inner bone.  This automatically "lodges" the anchor in the bone, as required by this Court's interpretation of the relevant claim limitations in *S&N I* at 386-87 and *S&N II* at 949.

Claim 2 is representative of the independent claims in the '557 patent (A155, col. 11, lines 11-20):

> "2.    A method for anchoring in bone a member and attached suture, comprising the steps of:
>     forming a hole in the bone;
>     attaching a suture to a member;
>     lodging the member within the hole by pressing the member with attached suture into the hole; and
>     deforming the member in a manner such that the member resiles against the portion of the bone that defines the hole."

Arthrex's four accused suture anchors are shown below (A32081).



| Bio-SutureTak | PEEK SutureTak | Bio-PushLock | PEEK PushLock |

Only the two SutureTak anchors are at issue in this appeal. The critical claim construction issue in all three trials and all three previous appeals has always involved the issue of whether or not the accused Arthrex anchors are resilient, and if so, whether, when the anchor is pressed into the bone hole, their resilience is sufficient to cause "lodging," as required by all the claims (*S&N I; S&N II; S&N III*). Arthrex's "divided infringement" defense, however, for its SutureTak anchors relates to the "attaching a suture to a member" limitation found in all the claims, which contrary to its position prior to and at the first trial, Arthrex now contends is a method step which it performs rather than the surgeons.

III.    **Procedural History**

   A.    **The First Trial In 2007**

From the initial complaint in this case, the infringement issue has always been one of inducement and contributory infringement by Arthrex, *see* 35 U.S.C. §§ 271(b) and (c) (A750-1; A763-4, ¶6). Arthrex provided surgeons with suture anchors which "lodged" due to their resilience, while also providing the surgeons with FDA-approved instructions as to how the surgeons should implant those anchors. Indirect infringement requires proof of direct infringement, and at the time this suit began, the law was clear that direct infringement must be by a single entity, *Fromson v. Advanced Offset Plate, Inc.,* 720 F.2d 1565, 1568 (Fed. Cir. 1983); *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1272 (Fed. Cir. 2004).

In October, 2004, Arthrex responded to Smith & Nephew's contention interrogatories as to all its non-infringement defenses without raising or even suggesting any defense as to direct infringement based on the actions of multiple entities (A36679; A36688-91; A36707). Instead, Arthrex identified the infringement issue as only being a question of whether its anchors "lodged" due to their resilience for independent claims 1 and 2 (A36689-90). The alleged lack of resilience in the accused anchors was also Arthrex's primary non-

7

infringement defense for the remaining claims. While Arthrex now relies on the "attaching a suture to a member" limitation as a basis for its "divided infringement" defense, it never raised any issue as to this limitation or even suggested the existence of such a defense at that time (A36689-91).[1]

In September, 2005, the parties proposed claim constructions. In its submission, Arthrex again failed to address the "attaching a suture to a member" limitation, and it failed to suggest any "divided infringement" defense relating to it (A829). Instead, as for that limitation, Arthrex only sought to interpret the word "member" in that limitation as structure that was required to be resilient (A829). This is precisely how Arthrex treated the limitation in its Motion for Summary Judgment of Non-Infringement filed on November 30, 2006 (A1226; A1253) and in its Markman Brief filed January 7, 2007 (A2733; A2779). In that summary judgment motion, Arthrex tied in its construction the "member" in that limitation with a non-infringement defense relating to just *one* of its SutureTak anchors, the Bio-SutureTak. According to Arthrex, the Bio-SutureTak anchor did not meet that limitation because the suture was never physically attached to the "member" (as Arthrex defined "member"), but rather just to a loop of thread

---

[1] The "attaching a suture to a member" limitation in independent claim 3 includes "threading the suture through a passage." Arthrex noted this additional language, but instead of raising a "divided infringement" defense based on it, Arthrex denied doing it or instructing anyone else to do it (A36690).

embedded in and extending from the anchor (A1253-55). In neither extensive filing did Arthrex raise any construction on the limitation as a method step for just the surgeon, and it never suggested any possible "divided infringement" defense.

Smith & Nephew on the other hand treated the "attaching a suture to a member" limitation as a structural requirement because in the preferred embodiment of the '557 patent, the surgeon does ***not*** perform the step of actually attaching a suture to the anchor, but rather implants a resilient anchor with the suture already "embedded" in it (A153, col. 8, lines 50-64; A149, Figs. 15-18). However, an alternate embodiment allows for attachment by the surgeon (A154, col. 10, lines 9-18; A149, Fig. 19). Thus, Smith & Nephew's proposed construction covered both possibilities (A834).

In deciding the summary judgment motions prior to the first trial, the district court construed the "attaching a suture to a member" limitation, consistent with the specification, as only meaning that the suture is somehow attached to the anchor before insertion into the bone (A8084, A8094), *Smith & Nephew, Inc. v. Arthrex, Inc.,* 511 F. Supp. 2d 1046, 1056 (D. Or. 2007). It rejected Arthrex's construction of this limitation intended to provide an

9

infringement defense for its Bio-SutureTak anchor alone based on the physical attachment of a suture to that anchor's threaded loop (A8092-3).

Arthrex never raised any possible issue as to direct infringement based on the construction of the "attaching a suture to a member" limitation in its Pre-Trial Brief of April 30, 2007 (A6595-98) or when, in accordance with the district court's trial management order, the parties met to draft the Joint Proposed Jury Instructions for the 2007 trial (A36710; A36714).  Smith & Nephew's proposed jury instruction No. 2.1 ("Claim Construction for the Case"), included the following proposed claim construction, with "attaching a suture to a member" set out, not as a method step, but as a structural limitation (*see* A8581; A8598), while including language consistent with the district court's denial of Arthrex's Motion for Summary Judgment as to its Bio-SutureTak anchor (A36419; A36420):

> "***'Attaching a suture to a member' means that the suture is attached to the anchor itself.***  The molded-in eyelet of the BioSutureTak is part of 'the anchor itself,' and as a result, this device does attach the suture to the member.  The eyelet of the Push-Lock, though a separate piece, is part of the anchor, and as a result, this device does attach the suture to the member."[2]

Arthrex did not propose a contrary construction for this claim limitation (A36421-22), nor did Arthrex ever make any objection to this construction.  In

---

[2] Unless otherwise noted, it is our emphasis that is added here and throughout.

10

fact, when discussing this construction at trial, Arthrex merely asked to substitute the word "device" or "anchor" for "member" in the construction (A30625; A30660-61), which change the district court adopted when it gave this construction to the jury (A29597; A29611; A8351; A8403-4).

More specifically, on the issue of direct infringement, Smith & Nephew relied on the AIPLA Model Jury Instructions from 2005 (A36760-62), and it made clear in three of its proposed jury instructions that direct infringement of all the claims was based *solely* on the actions of a single entity – the surgeons (A36767):

> "In this case, Dr. Hayhurst and Smith & Nephew *assert that the surgeons who follow Arthrex's written instructions* for Arthrex's Bio-Suture Tak, Peek and PushLock suture anchors *directly infringe* claims 1 to 7 of Dr. Hayhurst's patent."

Similarly, Arthrex's own proposed jury instructions (based on the Federal Circuit Bar Association Model Instructions) made clear that direct infringement was based *solely* on the action of a single entity – the surgeons (A36717; A36738):

> "In this case, Smith & Nephew *asserts that the surgeons who follow Arthrex's written instructions* for Arthrex's Bio-Suture Tak, PEEK and PushLock suture anchors *directly infringe claims 1 to 7 of the '557 patent*.  Smith & Nephew does not assert that Arthrex directly infringes claims 1 to 7 of the '557 patent."

11

At that first trial, Smith & Nephew had to prove that all the claim limitations were met under the district court's claim constructions, including Smith & Nephew's proposed "attaching a suture" construction, which was ultimately given the jury without objection by Arthrex (A8351; A8403-05).[3] This included proof not only as to the physical structure of the accused anchors but as well as to how the surgeons followed Arthrex's FDA-approved instructions for use of those anchors (which are included with each anchor sold) and in so doing practiced the steps of the claims (A8244-54; A8269-83).  This evidence included an actual  demonstration by an orthopedic surgeon implanting Arthrex's anchors (in foam block) following Arthrex's surgical instructions (A8263-64; A8269; A8283-300).  That evidence related to all of Arthrex's SutureTak anchors and included how the sutures were already physically attached to the SutureTak anchors before the anchor was removed from its package and implanted (A8283-86; A8289-91; A8295-97).  At trial, Arthrex challenged ***none*** of this evidence as establishing direct infringement by the surgeon alone under the claim constructions given the jury.  In fact, Arthrex never raised any issue as to the "attaching a suture to a member" limitation at

---

[3] In this case, the surgeon was not responsible for the structural features of the anchor in the claim, including its resilience or the attachment of the suture.  The surgeon was a direct infringer by following the steps of the claims to implant such an anchor.

the first trial and never suggested in any way that Smith & Nephew had failed to prove direct infringement by the surgeon alone for any of the accused anchors. Instead, Arthrex's sole non-infringement defense was that none of its accused anchors were resilient at all, and therefore, none of them could "lodge" because of their resilience (A6595-98; A36962-63; A36968-9; A36977).

Consistent with all this, and without objection by Arthrex, the district court's final jury instructions as to direct infringement *only* dealt with proof of direct infringement by the surgeon alone (A8351; A8407-8):

> "In this case, ***plaintiffs assert that the surgeons who follow Arthrex's written instructions*** for Arthrex's Bio-SutureTak, PEEK SutureTak, PEEK PushLock, and Bio-PushLock suture anchors ***directly infringe*** claims 1 through 7 of the '557 patent. Plaintiffs allege Arthrex indirectly infringes the claims of the '557 patent.

> As I just said, ***plaintiffs allege the surgeons following Arthrex's written instructions for its products involved in this case directly infringe claims 1 through 7 of the '557 patent***.
> *     *     *

> Plaintiffs assert that Arthrex actively induced surgeons to directly infringe the '557 patent. To show induced infringement, ***plaintiffs must prove that it is more likely than not that the surgeons have directly infringed the '557 patent*** and that Arthrex has actively and knowingly aided and abetted that direct infringement."

The trial resulted in a hung jury (A8432) and both parties filed JMOL motions.

In Arthrex's JMOL motions, as had been the case since suit was brought in 2004, Arthrex completely failed to raise any possible non-infringement defense based on any "divided infringement" theory, and it failed to raise any deficiency in Smith & Nephew's proof of direct infringement.  Nor did Arthrex raise any non-infringement defense relating to the "attaching a suture to a member" limitation or any other claim limitation, with the exception of those limitations relating to the physical resilience of the accused anchors (*e.g.,* "lodging") (A36962; A36964-67; A36968-77).

In Smith & Nephew's JMOL motion, it pointed out how Arthrex completely failed to challenge its evidence that most of the claim limitations including the "attaching a suture" limitation were met (A37168; A37190-95).  In response, Arthrex was silent as to this (A37204; A37207-16).[4]

---

[4] Now, Arthrex repeatedly states that Smith & Nephew's proof at this trial was only of divided infringement.  Arthrex's support for this is a single sentence of testimony which actually supports direct infringement by the surgeon under the claim construction given the jury for the "attaching a suture" limitation (A8403-04) (Blue Brief, pp. 5, 8, 9, 12, 13, 34, 35).  But if Arthrex is correct, it meant that Smith & Nephew's proof at the first trial did ***not*** meet the requirements of the direct infringement instructions which had been given the jury.  Arthrex never raised such an alleged failure of proof at that trial or in its post-trial motions (*see* A36962-67; A36968-77).  In fact, the first time Arthrex ever even made such an argument was some three months ago in July of 2014 as part of its briefing relating to its motion to reopen the judgment at issue here (A36241; A36254; A36599; A36605).

### B.    The Second Trial In 2008

Because Arthrex had failed to challenge any of Smith & Nephew's direct infringement evidence for all the claim limitations (except those relating to resilience) at the first trial, the parties and the court discussed, at a conference on December 19, 2007, limiting the re-trial on infringement to the claim limitations relating to resilience (A36978; A36981-82).  There, the district court said (A36982):

> "I will say this, however, that there are a number of issues not fairly linked to the concept of resilience that were the subject of some substantial proof at the last trial, and by that – when I say related to the concept of resilience, I mean concepts like member, deformable, lodging, those sorts of things.  There were other aspects of the claims that were the subject of evidence at trial that are not in any serious dispute.  And I'm going to let you all take a crack at defining the universe of issues centered on the concept of resilience that are at issue and those that don't require any proof by plaintiff.
>
> My impression from the first trial is that plaintiff was – plaintiffs were put to that proof by the absence of any stipulation, and so you should take a crack at that.  ***If you fail at it, then I myself will exclude from the second trial some of the issues that were, as I've said, the subject of evidence at the first trial on my own.***  But I'm going to encourage you to take a crack at that first."

The "attaching a suture" limitation and the evidence related to it was certainly one of those issues, which was unrelated to resilience and not disputed at the first trial.

Although this Court had some months earlier decided the case of *BMC Resources, Inc. v. Paymentech, L.P.,* 498 F.3d 1373 (Fed. Cir. 2007) on which Arthrex now heavily relies as supposedly making its "divided infringement" defense "viable", Arthrex never mentioned at this conference any such defense or any possible issue as to the "attaching a suture" limitation.  The first time Arthrex raised with the district court a possible "divided infringement" defense was in some of its pre-trial filings just prior to the re-trial in June of 2008.

On April 28, 2008, Arthrex filed its proposed witness summaries. According to the summaries, Arthrex's witnesses would now testify (contrary to the uncontested evidence in the first trial) that Arthrex's FDA-mandated instructions for use of its accused anchors did not direct the surgeons how to implant its anchors at all (A36996-97; A37009; A37019), and that the SutureTak anchors were sold by Arthrex with a suture pre-attached to them which surgeons do not replace (A37003; A37009; A37014).  This was a back-handed way of raising Arthrex's new "divided infringement" defense, which Arthrex then confirmed on May 5, 2008 in its proposed jury instructions (A8678; A8712; A8751).  Smith & Nephew objected to this new defense in its Pre-Trial Brief (A8581; A8592), and it submitted two motions *in limine* to exclude such a new

defense and the new evidence relating to it (A8752; A8786-91; Motions *in limine* 36, 37).[5]

At the May 19, 2008 pre-trial conference, in an effort to streamline the re-trial, the district court ruled that Smith & Nephew did not have to prove at the re-trial that any claim limitation was met, if Arthrex had not contested that proof at the first trial.  This included the "attaching a suture to a member" limitation (A10802; A10805-07).  In addition, it granted Smith & Nephew's motions *in limine* and ruled that Arthrex had **waived** its new defense of lack of direct infringement based on multiple entities (A10815):

> "But more importantly to me is this is a brand-new defense too late in the game to be raised.  So I grant it [Motion *In Limine* No. 36] for that reason and not because I resolve the factual dispute contained within it.
>
> 37, the same basic problem.  So I grant 37 for the same basic reason.  It's also not really the dispute we're here to resolve in this trial."

In fact, in denying Arthrex's JMOL motion made during the second trial*,* the district court confirmed its earlier pre-trial ruling that Smith & Nephew was not required to put on what the district court characterized as Smith & Nephew's

---

[5] Smith & Nephew was aware of the possibility that Arthrex might try to raise a new defense relating to direct infringement because Arthrex wrote Smith & Nephew a letter on February 1, 2008 referencing the *BMC* case.  In the letter, Arthrex indicated it would file a partial motion for summary judgment on the issue (A36995), but it did not.

"abundant" evidence of direct infringement from the first trial (A29034;

A29100-1).

Instead, at the second trial, the district court again instructed the jury as to

direct infringement as follows (A11108; A11122-24):

> "In this case, plaintiffs assert **_that the surgeons_** who follow
> Arthrex's written instructions for Arthrex's Bio-Suture Tak, PEEK
> Suture Tak, and PushLock suture anchors **_directly infringe_** claims 1
> through 7 of the '557 patent."

*   *   *

> "To show induced infringement, **_plaintiffs must prove that it is_**
> **_more likely than not that the surgeons have directly infringed_** the
> '557 patent and that Arthrex has actively and knowingly aided and
> abetted that direct infringement."

*   *   *

> "It is not necessary to show that Arthrex has directly infringed, **_so_**
> **_long as you find that the surgeons using Arthrex anchors directly_**
> **_infringed.  If there is no direct infringement by surgeons, there_**
> **_can be no induced infringement._**
>
> To determine indirect infringement by Arthrex, you must first
> determine **_whether the acts performed by the surgeons constitute_**
> **_direct infringement._**"

The same direct infringement instruction was given for contributory

infringement (A11125).

The second jury returned a verdict of direct and indirect infringement in favor of Smith & Nephew (A11140-42), and judgment was entered accordingly (A11927-28).

In its post-trial JMOL motion, Arthrex raised its divided infringement defense for largely the same reasons as it raises here, except it failed to address why it had not raised this defense at the first trial or why the district court's waiver ruling was an abuse of the district court's discretion (A11147-48; A11171-74; A11179).  The motion was denied (A11868), and Arthrex then appealed (A11929-30).

### C.    The First Appeal Decided In 2009 (*S&N I*)

At the outset of that appeal, Arthrex made an emergency motion for a stay of the injunction which had been entered by the district court (A30707).  In that motion, Arthrex raised, among other issues, its "divided infringement" defense (A30720-22).  A motions panel granted Arthrex's motion for a stay, *Smith & Nephew, Inc. v. Arthrex, Inc.,* App. No. 09-1091, Order Doc. No. 22 (Fed. Cir. June 14, 2009) (A30760-63) indicating there was a "strong likelihood of success" on the appeal on the divided infringement issue (A30763).  It also said

19

this statement was "without prejudicing the ultimate disposition of this case by a merits panel" (A30763).[6]

In its briefing for that first appeal (*S&N I*), Arthrex argued that it was entitled to judgment of non-infringement as to its SutureTak anchors based on its "divided infringement" defense as, according to Arthrex, the "attaching a suture to a member" limitation only covered a method step performed by the surgeons at the time the anchors are actually implanted (contrary to the disclosure in the '557 patent and the claim construction given the jury at the first trial) (A19786; A19835-37; A19694; A19737-41).  Smith & Nephew responded, pointing out to this Court that the district court had ruled Arthrex had waived this defense (A19903; A19971-74).[7]

On December 2, 2009, this Court changed the district court's construction of one claim limitation ("resiles") relating to the amount of holding force required due to the resiliency of the anchors, *S&N I* at 387.  This Court, however, did not grant Arthrex judgment of non-infringement as to its

---

[6] A finding of likelihood of success by a motions panel (dealing with a stay of an injunction) of this Court does not bind the merits panel, *see Standard Havens Prods. v. Gencor Indus.,* 897 F.2d 511, 516, fn. 5 (Fed. Cir. 1990).

[7] In this first appeal, Arthrex made no attempt to show the district court's waiver ruling was an abuse of discretion.  Instead, in its reply, it only argued that ***Smith & Nephew could not prove*** waiver (A19694; A19738-9).

SutureTak anchors based on its "divided infringement" defense, but instead, it remanded the case for a new trial as to infringement as to all the accused anchors based on that new claim construction (*S&N I* at 387).

### D.    The Third Trial In 2011

Prior to the third trial, the district court again entertained summary judgment motions.  Arthrex's motion sought a ruling of no infringement, and it included a section on the same "divided infringement" defense that Arthrex had raised before this Court in the first appeal.  In its summary judgment brief, Arthrex repeated virtually all of the same arguments it made to this Court on that issue in the first appeal (A11959; A11991-6).  The district court treated this portion of Arthrex's motion as a request for reconsideration of its earlier 2008 waiver ruling (A13360; A13364).[8]

In its Opinion and Order denying Arthrex's summary judgment motion, *Smith & Nephew, Inc. v. Arthrex, Inc.,* 2010 WL 3467454 (D. Or. Aug. 30, 2010) (A13360-66), the district court found that the mandate rule precluded reconsideration of Arthrex's divided infringement issue, but even if it did not,

---

[8] In its Brief here, Arthrex says that the district court "never disputed that Arthrex's showing that divided infringement, if raised, is a complete defense to Smith & Nephew's allegations against Arthrex's SutureTak anchors" (Blue Brief, p. 5).  As the district court ruled the defense was waived, it never reached the merits of the defense at all.

Arthrex had not met the standard for a motion for reconsideration (A13362-65). Further, the district court noted that Smith & Nephew's direct infringement case had **never** depended on direct infringement being proven by the actions of multiple entities in either of the two previous trials (A13364-5):

> "***It is worth noting that S&N, in more than six years of litigation, has never made the legal argument that BMC Resources found erroneous; that direct infringement could be proven based on the 'combined action(s) of one or more persons or entities, . . . jointly liable for the infringement.'*** *See BMC Resources*, 498 F.3d at 1379 (quoting *On Demand Machine Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1344-45 (Fed. Cir. 2006)).  Rather, as the jury instructions from the trials reflect, 'plaintiffs assert[ed] that the *surgeons* . . . directly infringe claims 1 through 7.'  (Court's Jury Instruction No. 15 (#327); Court's Jury Instruction No. 16 (#487) (emphasis added); *see generally* Pls.' Resp. (#729) 25-27.)  Regarding direct infringement, the jury was instructed that '[a] patent claim is literally infringed only if the methods of using Arthrex's suture anchors include each and every method step' and if not, then 'the *surgeons* using these methods do not literally infringe that claim.'  (Court's Jury Instruction No. 19 (#327); Court's Jury Instruction No. 19 (#487) (emphasis added).)  These do not reflect legal error, or reliance on a rule of law that was later clarified or changed.  ***S&N never argued the combined actions of Arthrex and the surgeons created joint liability for infringement, or even that the actions combined at all.***"

Arthrex, in its brief before the district court in support of its latest Rule 60(b) motion, admitted that the district court "correctly states S&N's infringement position" (A36241; A36253-4).[9]

The third trial was held in June of 2011, and once again, Smith & Nephew's direct infringement case depended solely on the surgeons, which fact even Arthrex's proposed jury instruction specified (A16110; A16140). Once again, the district court ruled that infringement was not going to be litigated except on the issue of whether Arthrex's anchors were resilient, as required by this Court's claim interpretation from the second appeal (A19532; A19579-81; A29554; A29569). And once again, in the final instructions, direct infringement was defined as something only the surgeons do. Specifically, the district court instructed the jury exactly as it had in the first and second trials that a single entity had to be proven to be the direct infringer (A19532; A19584):

---

[9] Now, before this Court, Arthrex claims this is incorrect, and that Smith & Nephew only "contended" that direct infringement was based on the combined actions of Arthrex and the surgeons (Blue Brief, pp. 34-35).

"To show induced infringement, Smith & Nephew must prove that it is more likely true than not true that ***the surgeons have directly infringed*** the '557 patent and that Arthrex has actively and knowingly aided and abetted that direct infringement."[10]

A similar instruction was given for contributory infringement (A19582-83).

The jury, which is presumed to follow the instructions given, *see InTouch Technologies, Inc. v. VGO Communications, Inc.,* 751 F.3d 1327, 1355 (Fed. Cir. 2014), found both direct infringement and indirect infringement for all of Arthrex's accused anchors (A16494-96).  Judgment was entered based on that verdict (A16500-01).

On December 16, 2011, however, the district court granted Arthrex's JMOL motion as to both direct and indirect infringement (A17929; A17937-38), which ruling had nothing to do with the direct infringement issue as framed in this appeal.  Instead, based on Arthrex's new claim construction of the "lodging" limitation proposed by Arthrex during the third trial, the district court concluded the "lodging" limitation was not met by the Arthrex anchors (A16337-38;

---

[10] When Arthrex first raised its "divided infringement" defense, Smith & Nephew explained in its Pre-Trial Memo for the second trial that if the district court changed the "attaching a suture" construction, as Arthrex requested, Smith & Nephew could still prove "control and direction" under *BMC* to establish direct infringement by the surgeons (A8581; A8593-94; A8594).  Such proof was not necessary because the district court did not change that construction and ruled the defense had been waived.

24

A16343).  Judgment was entered accordingly, and Smith & Nephew appealed

(A17951-52).

### E.    The Second Appeal Decided In 2013 (*S&N II*)

In Arthrex's Brief for the second appeal (*S&N II*), as an alternative

ground for affirming the finding of no infringement, at least as to its SutureTak

anchors, Arthrex again raised its "divided infringement" argument, to which it

added an argument that the district court's 2010 denial of its summary judgment

motion as to its "divided infringement" defense was also incorrect (A33363;

A33424-28).  Arthrex again stated that, as a result of its new interpretation of the

"attaching a suture" limitation, it was now entitled to a judgment of non-

infringement for its SutureTak anchors based on this "divided infringement"

defense alone (A33428).

On January 16, 2013, this Court reversed the district court's granting of

JMOL, and it ordered reinstatement of the jury verdict from the third trial, which

included findings that there was direct infringement as to Arthrex's SutureTak

anchors, *S&N II* at 948-49, 951 (A16494-95).  While this Court did not

specifically address Arthrex's "divided infringement" argument in its opinion, it

did expressly state that all the other arguments raised in the appeal were

"without merit" (*S&N II* at 950).  As Arthrex does not deny here, this

25

necessarily included all Arthrex's arguments as to its "divided infringement" defense.

### F.     The Third Appeal Filed In 2013 (*S&N III*)

After this Court's mandate issued in the second appeal (A33473), Smith & Nephew moved in the district court for re-entry of judgment of direct and indirect infringement, as reflected by the jury's verdict in the third trial (A33489-90; A33492-93).  Arthrex objected, arguing that it had just filed four new motions that precluded entry of the judgment (A34332-33).  After a hearing on September 9, 2013, the district court denied all four of Arthrex's motions (A36221-2), and on September 12, 2013, it entered final judgment in favor of Smith & Nephew (A36226-7).

On October 15, 2013, Arthrex filed its notice of appeal for the third appeal (A35732-34), and on January 6, 2013, Arthrex filed an amended notice of appeal relating to the supplemental damages awarded to Smith & Nephew for Arthrex's post-trial infringing sales up until March of 2013 (A36048-49).  This Court consolidated those appeals, and briefing was completed in May of 2014.

### G.     The Fourth Appeal Filed In 2014 (*S&N IV*)

After briefing had been completed in the third appeal, the Supreme Court issued its decision in *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S.Ct.

26

2111 (2014), holding that a single entity must perform all the steps for direct

infringement.  Arthrex then moved in the district court on July 3, 2014 under

Rule 60(b)(6) of the Federal Rules of Civ. Procedure to reopen the September

12, 2013 judgment based on the same "divided infringement" defense this Court

found to be "without merit" in the last appeal (A36241-42).  On August 15,

2014, the district court denied the motion (A1).  Arthrex then filed a notice of

appeal to this Court (A36664-5).  The parties agreed to treat the third and fourth

appeals as companion cases for oral argument and to set an expedited briefing

schedule in this appeal.  This Court then granted Arthrex's unopposed motion to

that effect on August 29, 2014 (Doc. 13).  These two pending appeals finally

decide all the remaining issues before the district court.[11]

---

[11] In the third appeal (*S&N III*), Smith & Nephew noted in its Main Brief (Red
Brief, p. 7, fn. 2) that an issue of supplemental damages for Arthrex's post-trial
infringing sales after March, 2013 still remained for the district court to decide.
That is no longer the case as Smith & Nephew has expressly waived its right to
any supplemental damages for that time period (A37164-65).

## SUMMARY OF THE ARGUMENT

In August 2012, over a year after the verdict of infringement in the third

trial, this Court in an *en banc* ruling changed the law of direct infringement from

what had been this Court's established requirement that a single entity be the

direct infringer to one where multiple entities could combine (without "control

or direction") to be the direct infringer, *Akamai Technology, Inc. v. Limelight*

*Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (*en banc*).  In June, 2014, the

Supreme Court overturned that decision in *Limelight Networks, Inc. v. Akamai*

*Technology, Inc.,* 134 S. Ct. 2111 (2014), requiring a single entity to be the

direct infringer, which is exactly what the law had been for all three trials in this

case.

Accordingly, this short-lived change in the law as to direct infringement

from August 2012 to June 2014 was **never** the basis for any verdict or judgment

in this case, and as such, the Supreme Court's decision in *Limelight* does not

constitute the "extraordinary circumstances" required by Rule 60(b)(6) to reopen

the judgment here, and no other factor exists that established such

"extraordinary circumstances" requiring the reopening of the judgment.

Arthrex also improperly attempts to use its Rule 60(b)(6) motion to re-

argue in this appeal the district court's ruling that Arthrex waived this "divided

infringement" defense by failing to timely assert it. Arthrex presented the exact same argument to this Court in the last appeal, and this Court clearly dismissed it as "without merit."

This Court's ruling that Arthrex's argument was "without merit" was entirely correct. The district court did not abuse its discretion by its original ruling that Arthrex waived any defense of "divided infringement" by failing to raise it in the first trial in 2007 or in denying Arthrex's motion for reconsideration of its waiver ruling in 2010 before the third trial. Arthrex simply never raised the defense in the first four and a half years of this case until just prior to the second trial. Its sole excuse for doing so is its contention that prior to the first trial, this Court's "most recent pronouncement on divided infringement" was in *On Demand Machine Corp. v. Ingram Industries, Inc.,* 442 F.3d 1331 (Fed. Cir. 2006), which, according to Arthrex, created "confusion" as to the standards as to whether direct infringement could be proven by the actions of multiple parties.

But Arthrex never raised such a possible defense even prior to the *On Demand* decision in March of 2006 when the law clearly required a single entity as the direct infringer. Moreover, the *On Demand* case was clearly not a pronouncement of this Court on the issue of direct infringement. The case itself

turned on claim construction and was not decided on the basis of direct infringement. Instead, all that is in that opinion as to direct infringement is *dicta* commenting on a jury instruction that allowed direct infringement to be proven by multiple parties, *Id.* at 1345. If in March of 2006, *On Demand* made the law "confusing," as Arthrex claims, Arthrex certainly had an obligation to raise that issue by June of 2007 at the time of the first trial. Instead, Arthrex merely pretends now it had such a "divided infringement" defense prior to the 2007 trial, which it implies it silently "dropped" because of *On Demand*.

Thus, while the case of *BMC Resources, Inc. v. Paymentech, L.P.,* 498 F.3d 1373 (Fed. Cir. 2007), which was decided after the first trial, held that direct infringement required a single entity, it did no more than **confirm** the law on the subject, as to which the district court properly instructed the jury in all three trials.

Finally, Arthrex improperly asks this Court to enter a judgment of non-infringement as to its SutureTak anchors. The Ninth Circuit law does not permit the underlying judgment to be attacked in that way by means of a Rule 60(b) motion, and it is clear that legal and fact issues as to claim construction and infringement would exist if the judgment were to be reopened.

30

# ARGUMENT

## I.    Standard Of Review

The parties agree that denial of a Rule 60(b) motion to reopen a judgment is not unique to patent law and therefore requires this Court to apply the law of the regional circuit.  Under Ninth Circuit law, a district court's denial of a Rule 60(b) motion is reviewed for abuse of discretion, *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1357 (Fed. Cir. 2008).

Smith & Nephew, however, disagrees with Arthrex's contention that review of the denial of Arthrex's Rule 60(b)(6) motion in this case involves any "erroneous view of the law" which changes that standard into one of a *de novo* review by this Court (*see* Blue Brief, p. 20).[12]  Further, to the extent this appeal involves a review of the district court's waiver of a defense for failure to timely assert it in litigation, such a ruling is also reviewed for abuse of discretion in the Ninth Circuit, *Federal Savings and Loan Insurance Corporation v. Gemini Management,* 921 F.2d 241, 244 (9th Cir. 1990); *Caudle v. Bristow Optical,*

---

[12] The cases Arthrex cites are not on point, as *In re Frontier Properties, Inc.,* 979 F.2d 1358, 1362 (9th Cir. 1992) relates to waiver of a right of a trustee to appeal in a bankruptcy case, and *United States v. Johnson,* 67 F.3d 200, 202 (9th Cir. 1995) relates to waiver of the right to appeal a sentence after a plea agreement in a criminal case.  Neither one involves the standard of review of denial of a Rule 60(b) motion.

*Inc.,* 224 F.3d 1014, 1021-22 (9th Cir. 2000); *Los Angeles News Service v.*

*Reuters Television International, Ltd.,* 149 F.3d 987, 996 (9th Cir. 1998).

Further, in the Ninth Circuit, the abuse of discretion standard also applies

to the appellate review of a decision on a motion for reconsideration, *S.E.C. v.*

*Platforms Wireless International Corp.,* 617 F.3d 1072, 1100 (9th Cir. 2010) as

well as to a decision on a motion *in limine, Flores v. Arizona*, 516 F.3d 1140,

1164 (9th Cir. 2008).

**II.     The District Court Did Not Abuse Its Discretion In Denying Arthrex's Motion Under Rule 60(b)(6) To Reopen The Judgment**

**A.     Rule 60(b)(6) Does Not Apply If The New Change In Law Does Not Involve A Change In The Law Underlying The Judgment**

Rule 60(b) of the Federal Rules of Civil Procedure allows a district court

to grant relief from a judgment under very limited circumstances, none of which

are applicable here.

In its motion below, Arthrex relies on Rule 60(b)(6) which permits a

district court to grant relief from a judgment for "any other reason that justifies

relief" (Blue Brief, p. 11).  Despite this seemingly broad language, this provision

has been limited by the Supreme Court to apply only in "extraordinary

circumstances," *see Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

The cornerstone of Arthrex's appeal is that such "extraordinary circumstances" exist because the Supreme Court's 2014 decision in *Limelight, supra,* requiring a single entity to be the direct infringer, represents an intervening change of law "that warrants reopening the judgment" (Blue Brief, p. 22).

As a threshold matter, however, more than a mere change in the law is required to meet the "extraordinary circumstances" requirement of Rule 60(b)(6), *Jones v. Ryan*, 733 F.3d 825, 839 (9th Cir. 2013).  As the 9th Circuit explained in *Phelps v. Alameida*, 569 F.3d 1120, 1133, 1138-39 (9th Cir. 2009), a change in the law that directly impacts a ruling or judgment can be one of the important factors in demonstrating "extraordinary circumstances" in the context of a Rule 60(b)(6) motion, but it depends on the nature of that change in law and how it applies to the case in question.  There, the Court found "extraordinary circumstances," saying (at 1139)

> "In both Phelps' case and in *Ritter, see id.,* the ***intervening change in the law directly overruled the decision for which reconsideration was sought.***"

Where the change in the intervening law, however, did ***not*** result in such an overruling of the underlying decision in question, the requirement of "extraordinary circumstances" is not met, *Cook v. Ryan,* 688 F.3d 598, 609-10

33

(9th Cir. 2012); *United States v. Soto-Valdez,* 2013 WL 5297142 at \*17, \*19 (D. Ariz. 2013).[13]

Thus, Arthrex must show that the change in law due to *Limelight* is one which would have ***changed the final judgment in this case*** entered on September 12, 2013 (A36226-7).  In other words, that judgment would have to have been based on the incorrect law which allowed multiple parties to combine to be the direct infringer, *see Akamai II.*

That is not the case here.  Unlike in *Phelps,* there would be no change in the September 12, 2013 judgment because of the Supreme Court's decision in *Limelight*.  As quoted earlier, the instructions given to the juries as to direct infringement ***at all three trials*** (and always without any objection by Arthrex) was that a single entity ***alone*** (the surgeon) must be proven to be the direct infringer (A8407-8; A11122-24; A19582-84).  ***This would have been the precise instruction required by the Supreme Court in Limelight if it had been decided in 2007 prior to the first trial.***  In fact, there is not one infringement

---

[13] *See also:  In re Brown*, 2013 WL 6511979, \*4, n.36 (9th Cir. BAP 2013) (finding no grounds for Rule 60(b)(6) relief since the original judgment did not rely on any cases that were partially overruled by the change in law); *Graham v. AT&T Mobility, LLC,* 247 Fed. Appx. 26, 31 (7th Cir. 2007) (denying motion for reconsideration under Rule 60(b)(6) since the original decision was based on the same legal standard as set forth in the asserted change in law); *Cross v. Benedetti*, 2012 WL 3252863, \*2 (D. Nev., Aug. 7, 2012) (denying Rule 60(b)(6) motion for reconsideration based on new intervening law, in part because the outcome would not have changed).

verdict and not one judgment ever entered in this case based on anything other than the surgeon *alone* being the direct infringer.

Thus, this change in the law by *Limelight,* limiting direct infringement to actions by a single entity, cannot be a basis for finding the "extraordinary circumstances" under Rule 60(b)(6) required to reopen the September 12, 2013 judgment of infringement, which was clearly based on the correct law today. Thus, the district court did not abuse its discretion in denying Arthrex's motion to reopen on this basis alone.

### B.   The *On Demand* Case Was Not The Law As To Direct Infringement For The First Trial

Before the first trial in this case in June of 2007, the law for both induced infringement and contributory infringement had long been that each required an act of direct infringement, *Joy Tech., Inc. v. Flakt, Inc*., 6 F.3d 770, 774 (Fed. Cir. 1993); *RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1268 (Fed. Cir. 2003).  Since at least 1983, the law had also been clear that such direct infringement required proof that a *single* entity perform that direct infringement, *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1568 (Fed. Cir. 1983); *see also, Cross Medical Prods. v. Medtronic Sofamor Danek,* 424 F.3d 1293, 1311 (Fed. Cir. 2005); *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1272 (Fed. Cir. 2004).  Arthrex now erroneously suggests

35

that the Supreme Court in *Limelight* changed the law of direct infringement as it existed at the time of the first trial, citing the panel decision in *On Demand Machine Corp. v. Ingram Industries, Inc.,* 442 F.3d 1331 (Fed. Cir. 2006) (Blue Brief, p. 26).

In its Brief, Arthrex repeatedly states that by the time of the 2007 trial, the *On Demand* case represented "the most recent pronouncement on divided infringement" (Blue Brief, pp. 8, 18, 26). Further, according to Arthrex, this Court in *On Demand* "approved a jury instruction that infringement can be found 'from the participation and' combined action(s) of more than one person or entity'" (Blue Brief, pp. 18, 26).

This was not a holding of *On Demand*. In that case, this Court reviewed a jury verdict of infringement, which after an extensive discussion of the claim limitations, specification and prosecution history, it **reversed** because it was based on a partly incorrect claim construction, *On Demand* at 1334. In addition, in response to the patentee's argument that the jury could still find direct infringement based on multiple parties (a position with which this Court in *On Demand* disagreed), this Court also reviewed a jury instruction, which said, in relevant part, "[i]nfringement of a patented process or method cannot be avoided by having another perform one step of the process or method," *Id*. at 1345.

36

While this Court then said it could "discern no flaw in this instruction," this

Court's comment as to this instruction played no role in its decision on the

merits and that statement was not a holding of this Court, but rather *dicta*.[14]  In

addition, since *On Demand* was decided by a three-judge panel of this Court, it

could not change the existing law requiring direct infringement by a single

entity, as established by this Court's earlier decisions, *see South Corp. v. United*

*States*, 690 F.2d 1368, 1370, fn.2 (Fed. Cir. 1982) (*en banc*).[15]

After the first trial, this Court decided the case of *BMC Resources, Inc. v.*

*Paymentech, L.P.,* 498 F.3d 1373, 1380 (Fed. Cir. 2007), which relied on the

well-established requirement for a single entity to be the direct infringer (at

1380):

> "Where a defendant participates in infringement but does not
> directly infringe the patent, the law provides remedies under
> principles of indirect infringement.  However, this court has held
> that inducement of infringement requires a predicate finding of
> direct infringement.  *Dynacore,* 363 F.3d at 1272.

---

[14] Arthrex cites an article by Nathaniel Grow, *Joint Patent Infringement Following Akamai*, 51 Am. Bus. L. J. 71 (2014), which correctly refers to the portion of the *On Demand* opinion relating to this jury instruction as *dicta, Id.* at 86.  The article further noted that the panel in *On Demand* "failed to provide any significant analysis or discussion on the issue."  *Id.* at 86.

[15] While Arthrex contends in its Brief that Smith & Nephew was entitled to the *On Demand* jury instruction at the first trial (Blue Brief, p. 9), Arthrex does not deny that the *On Demand* instruction was ***never*** given to the jury in the first trial or to any of the juries here.

Two such cases that have found that a party cannot be liable for direct infringement because the party did not perform all the steps are *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1568 (Fed.Cir.1983) (finding no direct infringement by manufacturer who performed the first step of a process claim even where its customer performed the other step of the claim) and *Cross Medical Products,* 424 F.3d at 1311 (rejecting patentees' efforts to combine the acts of surgeons with those of a medical device manufacturer to find direct infringement of an apparatus claim)."

In addition, in the *BMC* case, this Court confirmed that the statement in *On Demand,* on which Arthrex now seeks to rely, was indeed *dicta,* and it confirmed that *On Demand* did not change this Court's precedent on the subject, *id.* at 1380. Thus, this Court in *BMC* followed what had been the existing law since at least *Fromson* in 1983.[16] Accordingly, as in the first trial, the jury in the second trial in 2008 was properly instructed as to a single entity, the surgeon **alone**, being the direct infringer (A11122-24), and the subsequent infringement verdict was based on that law (A11140-42).

In late 2010, prior to the third trial, a three judge panel of this Court issued its decision in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311, 1314 (Fed. Cir. 2010) (*Akamai I*). Consistent with all this Court's prior holdings on direct infringement, it found no direct infringement because

---

[16] While Arthrex in its Brief states that *BMC* brought "clarity" to the law, citing *Muniauction, Inc. v. Thomson Corp.,* 532 F.3d 1318 (Fed. Cir. 2008), the clarity this Court in *Muniauction* was referring to related to the "control or direction" issue when multiple parties are involved in direct infringement, *Id.* at 1329.

38

multiple entities were involved.  This case also did not change the law on direct

infringement, and the jury in the third trial here in 2011 was properly instructed

as to direct infringement requiring a single entity (A19582-84).  That jury's

infringement verdict was also necessarily based on that correct law (A16494-

96), *InTouch Technologies, supra*.

After the third trial, this Court, on August 31, 2012, sitting *en banc,*

issued its decision in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d

1301 (Fed. Cir. 2012) (*Akamai II*), in which the majority held that, while all the

steps of a claimed method must be performed in order to find induced

infringement, "it is not necessary to prove that all the steps were committed by a

single entity."  *Id*. at 1306.

The *Akamai II* decision was issued after briefing was complete in the

second appeal but before oral argument.  Under the established procedure of this

Court, Smith & Nephew then had an opportunity to rely on the *Akamai II*

decision as an "intervening decision," *see, e.g., Amado v. Microsoft Corp.,* 517

F.3d 1353, 1359-60 (Fed. Cir. 2008).  But Smith & Nephew did not do so, as its

direct infringement case had always been based on a single entity, the surgeon, as the direct infringer.[17]

The Supreme Court granted certiorari in *Akamai II*, and on June 2, 2014, it issued its decision in *Limelight supra*, reversing this Court's *en banc* decision in *Akamai II*.  The Supreme Court explained that this Court's prior decision in *Muniauction* (which was not actually under review in the *Limelight Networks* case), required that performance of all the patent's steps must be attributable to a single entity (*Id.* at 2117-18).

As such, the Supreme Court in *Limelight **returned*** the law of direct infringement to what it was ***before August, 2012***.  This is ***exactly*** the state of the law as to direct infringement at the time of each of the three trials here, and exactly the state of the law that the September 12, 2013 judgment (reinstated as a result of *S&N II*) was based upon.  Thus, the *On Demand* case is not a basis for the "extraordinary circumstances" needed for the infringement judgment to be reopened under Rule 60(b)(6) here.

---

[17] The procedure for raising an intervening decision is set forth in F.R.A.P. 28(j) and Fed. Cir. R. 28(i).  Neither party ever did so, and as Arthrex concedes, neither party mentioned the case at the oral argument for the second appeal held on November 8, 2012.

### C.    Other Factors Do Not Support Reopening The Judgment Under Rule 60(b)(6)

#### 1.    Arthrex Was Not Diligent

The Ninth Circuit in *Phelps* referenced a number of other factors to be considered in determining whether or not the extraordinary relief of reopening a judgment under Rule 60(b)(6) should be granted.  According to Arthrex, these other factors are all met here.  They are not.

One important factor relates to diligence, *see Gonzales v. Crosby,* 545 U.S. 524 (2005) at 1136-37.  Here, Arthrex contends in its Brief that it was "diligent" because it filed its Rule 60(b)(6) motion immediately after the Supreme Court decided *Limelight* (Blue Brief, p. 27).  The diligence factor, however, is not based on a party's conduct ***after*** the law is changed, but rather on the party's diligence in pursuing the issue ***before*** the law is changed, *see Phelps* at 1136-37.

As to Arthrex's diligence before the change, Arthrex vaguely says it has "pursued its divided infringement defense at every stage in this case once the defense became viable" (Blue Brief, p. 27).[18]  Arthrex's artificial starting point

---

[18] Smith & Nephew does not concede that this "defense" ever was "viable" to the extent it had any merit whatsoever, (*e.g.,* there is evidence, discussed briefly *infra,* that surgeons attach the sutures to the SutureTak anchors using instruments Arthrex provides for just that purpose, although the extent of that use is currently not known as discovery closed in 2006).

of when its defense became "viable" is only after *BMC* was decided in 2007 after the first trial. But, as this Court recognized in *BMC* and *Muniaction,* the "defense" was "viable" long before that. In fact, it was viable from the time the lawsuit was filed in January of 2004 at all times up to and through the first trial, when the parties proposed jury instructions which specified direct infringement by a single entity. It was "viable" thereafter, when the jury was actually instructed as to direct infringement at trial, exactly as required by this Court's long held precedent and as would be required by *Limelight* now.

It was also "viable" when *BMC* was decided in September of 2007 until Arthrex ***first*** raised it in May 2008 just before the second trial. Arthrex's long silence on the issue does not meet the requirement for diligence, as it relates to "extraordinary circumstances" required to reopen a judgment under Rule 60(b)(6), *see Gonzalez*, *supra,* at 536-7; *Lopez v. Ryan*, 678 F.3d 1131, 1136 (9th Cir. 2012).

## 2. Arthrex Has Not Shown An "Interest In Finality"

Another factor relating to "extraordinary circumstances" is one of finality, *Lopez supra,* at 1136, and the reopening of the infringement judgment at this late stage now would certainly not promote finality in this case, which has been pending for over ten years. There have been three trials and two completed

42

appeals to this Court.  The two pending appeals by Arthrex relate primarily to its invalidity defenses decided by this Court in the first appeal (*S&N I*) and reopening of the infringement judgment this Court ordered reinstated in the second appeal (*S&N II*).  Further, what Arthrex seeks by its combination of both pending appeals is to have this case revert to its status ***prior to the first trial***, for a new trial on invalidity, the direct infringement issues at least as to its SutureTak anchors, and damages.  The fact that a case has been pending so long such as this, with so many decisions by the district court and this Court, is an important factor in affirming the district court's denial of Arthrex's Rule 60(b)(6) motion, *see Jones*, at 839, fn.4.

### 3.    The Fact That The Judgment Is For Significant Damages Is Not A Factor Under Rule 60(b)(6)

The reason Arthrex seeks delaying such finality is because, as Arthrex repeatedly mentions in its Brief, it now faces ***paying*** a large monetary judgment for its extensive twelve years of infringement (Blue Brief, pp. 6-7, 12, 19, 29-30, 41).  This is not a factor in determining if the "extraordinary circumstances" required to reopen a judgment under Rule 60(b)(6) exist, and while Arthrex cites to "fundamental fairness," there is a more important aspect of fairness in having Arthrex finally pay for its infringement, as found by a jury three years ago in 2011.

43

### III.  Arthrex Improperly Attempts To Use This Appeal To Re-Argue The District Court's Waiver Ruling

In its Rule 60(b)(6) motion, Arthrex re-argued the district court's rulings that it had waived its "divided infringement" defense.  This was not a proper basis for that motion, as the district court's waiver ruling had nothing to do with any change in the law of direct infringement set forth in *Limelight* or otherwise. But, Arthrex re-argues it here for the third time, and it raises the district court's denial of its motion for reconsideration of it in 2010 for the second time, because Arthrex asserts it is entitled to a written opinion of this Court on the issue (Blue Brief, p. 29).

It is clear that in both earlier appeals, *S&N I* and *S&N II*, the issue of waiver of this defense was not preserved for the district court, which was required to follow this Court's mandates as the law of the case, *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1356 (Fed. Cir. 2009) (citing *Sibbald v. United States*, 37 U.S. 488, 492 (1838)).

As this Court recently stated in *Retractable Technologies, Inc. v. Becton, Dickinson and Company,* 757 F.3d 1366, 1371 (Fed. Cir. 2014):

> "'Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication.' *Engel Indus., Inc. v. Lockformer Co.,* 166 F.3d 1379, 1383 (Fed.Cir.1999)."

More specifically, "the mandate rule forecloses reconsideration of issues implicitly or explicitly decided on appeal," *Amado,* 517 F.3d at 1364.

## A.    Arthrex's Argument Was Implicitly Decided Against It In The First Appeal (*S&N I*)

In the first appeal, while Arthrex sought a judgment of non-infringement as to all the accused anchors based on its claim construction issues relating to resilience, it also raised a separate argument seeking a judgment of non-infringement as to its SutureTak anchors based on its "divided infringement" defense. As to that latter issue, Arthrex made all the same arguments it makes here, including that the *On Demand* case changed the law on direct infringement so that prior to the 2007 trial Arthrex was somehow "unable" to raise any "divided infringement" defense (A19835-37; A19737-41). In its opinion, on the issue of infringement, this Court's **entire** discussion involved the Court's new construction of the claim term "resiles," which applies to **all** the claims and all the accused anchors. Because of the district court's error in construing that limitation, this Court reversed the infringement verdict (*S&N I* at 387).

While this Court concluded its opinion with the statement "[b]ecause we have reversed the judgment of infringement against Arthrex, it is not necessary to address Arthrex's additional arguments challenging that judgment" (*S&N I* at

45

389), this Court was quite clearly referring to Arthrex's other arguments relating to the claim construction issue that Arthrex had also raised on appeal.[19]

However, in remanding for a new trial on infringement as to **all** the accused anchors, this Court also said (*S&N I* at 387):

> "Arthrex argues that in light of the claim construction we have adopted, the district court should be instructed to enter judgment of noninfringement in Arthrex's favor. We disagree. ***Reasonable jurors could find infringement even under the revised claim construction***. For example, the push-out tests submitted by S&N suggested that resilience itself creates 7.5 pounds of resistive force in the accused anchors. A reasonable juror could find that amount of resistive force to be sufficient to lodge the anchor in the bone. Therefore, notwithstanding our decision as to claim construction, we decline to direct the entry of judgment of non-infringement in Arthrex's favor."

This statement by the Court is highly unlikely, if it had not implicitly rejected Arthrex's arguments relating to the waiver of its "divided infringement" defense. The threshold question there was whether Arthrex could carry the burden of proving that the district court had abused its discretion in finding that Arthrex had waived the defense (A19906; A19971-78). If that threshold had been met, this Court would not have remanded the entire case for a new trial on

---

[19] In addition to asserting a new construction of the term "resile," Arthrex raised the issue of the sufficiency of the evidence at trial under the incorrect construction of "resiles" used at trial, and the district court's failure at trial to clarify its incorrect construction of "resiles" in response to Arthrex's requests (A19817-18; 19828-34). In view of this Court's changing of the construction of "resiles," it was unnecessary for it to decide these issues, both of which related to the old construction.

46

infringement of all the anchors based on the "resiles" limitation, with the statement as to a reasonable jury still being able to find infringement as to all the anchors.  Instead, it would have remanded the case allowing Arthrex to raise the "divided infringement" defense on the merits.  Thus, the issue certainly was not "explicitly reserved or remanded in the first appeal," *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.,* 699 F.3d 1340, 1347 (Fed. Cir. 2012), and the only reasonable conclusion that can be drawn is that this Court ***implicitly*** decided the district court did not abuse its discretion in finding waiver of that defense.

While Arthrex contends that the district court was incorrect in relying on the mandate rule in denying Arthrex's 2010 summary judgment motion (Blue Brief, pp. 31-34), that was just ***one reason*** the district court denied the motion.  Here, Arthrex does not address the district court's ruling that the motion was  a request for reconsideration which did not meet the 9th Circuit's requirements for such a motion (A13362-64).  Such a ruling is also reviewed for abuse of discretion, *see S.E.C., supra.*

**B.**    **Arthrex's Argument Was Expressly Decided Against It In The Second Appeal (*S&N II*)**

If there was any doubt as to this Court finally disposing of Arthrex's "divided infringement" defense, its ruling in the second appeal eliminates it.

In that second appeal, as an alternative ground to uphold a portion of the non-infringement judgment as to its SutureTak anchors entered by the district court on JMOL, Arthrex once again included the same argument as to its "divided infringement" defense that it raised in the first appeal (*S&N I*) and which it re-argues here.  According to Arthrex there, it never waived this defense (A33363; A33367; A33424-28).

In its opinion in the second appeal, this Court explicitly ordered the reinstatement of the verdict, which included the jury's findings of ***direct infringement for Arthrex's SutureTak anchors*** (*S&N II* at 950; A16494-96). In addition, in that opinion, this Court expressly stated that ***all*** the "remaining arguments are ***without merit***," (*S&N II* at 950).  This was an express denial of Arthrex's challenge to the district court's waiver ruling, which was indeed a "remaining argument" in that appeal.  Thus, not only did the mandate rule preclude the district court from revisiting the issue in the context of Arthrex's latest Rule 60(b)(6) motion, *Amado*, 517 F.3d at 1364, but, as this Court has already decided the issue, it should dismiss Arthrex's latest appeal based on it.

48

In its Brief here, Arthrex does not deny that this Court dismissed its "divided infringement" argument as "without merit" in that second appeal (Blue Brief, pp. 24-25). Instead, Arthrex speculates that this Court found its argument in the second appeal as to its defense to be without merit only because this Court was relying on its *en banc* decision in *Akamai II* (Blue Brief, pp. 24-25), which neither side ever relied on or argued in that appeal. The language that this Court used, however, is ***not*** consistent with a ruling based on *Akamai II*.

Since the district court's ruling below was one of waiver, the issue on appeal turned on whether the district court abused its discretion in so ruling. Again, as in the first appeal, in order for this Court to reach the merits of Arthrex's "divided infringement" defense (and dismiss it on the merits because of *Akamai II*), it would again first have had to decide that the district court abused its discretion when it found waiver in 2008 and when it denied reconsideration of its prior waiver ruling in 2010.[20]

---

[20] Arthrex attempts to rely on the case of *TecSec, Inc. v. Int'l Business Machines Corp.*, 731 F.3d 1336, 1343 (Fed. Cir. 2013) for the proposition that where the decision could be based on two grounds, the mandate rule will not apply because "it is impossible to glean which issues were decided" (Blue Brief, p. 25). *TecSec* holds that in the case of an affirmance of a district court decision under Federal Circuit Rule 36 where the district court's judgment is supported by two independent grounds, the mandate rule will not apply. Here, this Court did not affirm in the second appeal. It reversed. Moreover, while it did not include reasons in its opinion, it clearly ruled that Arthrex's argument here was "without merit."

Accordingly, the only logical conclusion is that this Court's "without merit" statement was a ruling on Arthrex's contention it had not **waived** its divided infringement argument.  Thus, the mandate from the second appeal precluded the district court from revisiting the divided infringement issue even as part of a Rule 60(b) motion, and it should preclude reconsideration of the issue for the third time by this Court now.

### C.    The District Court Did Not Abuse Its Discretion In Ruling That Arthrex Had Waived Its Divided Infringement Defense For Failing To Timely Raise It

In its Brief, Arthrex repeatedly refers to the district court's rulings as to its belated "divided infringement" defense as a mere "refusal to allow" Arthrex to raise this defense (Blue Brief, pp. 7, 9, 17, 18, 30).  The issue, however, is one of the district court's ability to control the introduction of evidence at a re-trial, and it is well settled that a district court has broad discretion to preclude introduction of new evidence and issues in a re-trial, *see Wright & Miller*, Federal Practice and Procedure §2803.  In this context, the law in the 9th Circuit is that defenses may be waived for failing to timely assert them, *Hill v. Blind Industries and Services of Maryland,* 179 F.3d 754, 756-8 (9th Cir. 1999).

On October 8, 2004, some seventeen months **before** the *On Demand* opinion issued, Arthrex was required to identify **all** its non-infringement

50

defenses for each limitation in claims 1-7 of the '557 patent. With the law

requiring direct infringement by a single entity, *see Fromson,* Arthrex never

raised any "divided infringement" defense (A36679; A36688-9; A36707).

Arthrex also failed to even suggest any such possible "divided infringement"

defense in September of 2005, when it submitted its proposed constructions for

the claim limitations (A829).

Prior to the first trial, Arthrex also never raised any "divided

infringement" defense even in Arthrex's Pre-Trial Memo (A6595-600), and on

May 1, 2007, when Smith & Nephew proposed its jury instructions, requiring

direct infringement by a single entity, Arthrex still failed to raise the defense

(A36760-2; A36767-69). Arthrex similarly had no objection to the final jury

instruction in the 2007 trial requiring the direct infringer to be a single entity

(A8407-8), and after the trial, Arthrex did not dispute the argument in Smith &

Nephew's JMOL motion that it had proven direct infringement by a single entity

(A37168; A37190-95; A37204-16).

While Arthrex's current excuse for failing to raise its "divided

infringement" defense at that time was that the *On Demand* case in 2006 made

the law of direct infringement "unclear" or "confused," there is no evidence the

law was "unclear" to Smith & Nephew or the district court or even to Arthrex in

2007.  Nevertheless, according to Arthrex, it "had no legitimate 'divided infringement' defense at the time of the first trial" because of this "confused" state of the law (Blue Brief, p. 35).

There are two responses to this assertion.  First, if the law was unclear at the time of the first trial, Arthrex was required under 9th Circuit law to raise the issue by objecting to the related instruction or there is waiver, *Pierce Packing Co. v. John Morrell & Co.,* 633 F.2d 1362, 1365 (9th Cir. 1980).  It is only where the instruction represents a "solid wall of authority," and as a result, where an objection would be futile, that there is no such waiver, *Knapp v. Ernst & Whinney,* 90 F.3d 1431, 1438-9 (9th Cir. 1996).

Secondly, while Arthrex implies throughout its Brief that it had such a "divided infringement" defense all along and only "dropped" the defense prior to the first trial because of its confusion over the state of the law due to *On Demand*, there is absolutely no record that Arthrex ever even considered such a defense until **long after** the first trial.  There is also no evidence that Arthrex actually "dropped" such a secret defense before the first trial because of *On Demand,* and in fact, there is no evidence whatsoever that Arthrex was even

aware of the *On Demand* case prior to the first trial.[21]  Thus, Arthrex's

implication that it somehow had such a defense prior to the first trial but was

prevented from even mentioning it once because the law was "confused" is a

complete illusion.

Since Arthrex now contends the law was "clarified" by the *BMC* case,

decided by this Court in September of 2007, (Blue Brief, pp. 5, 9, 18, 26-27, 29,

30, 35), Arthrex would have been expected to raise the defense immediately

thereafter.  But, it did not.  As Arthrex failed to challenge Smith & Nephew's

evidence in the first trial that all of the claim limitations (other than those related

to the resilience of the accused anchors) were met, the district court in a

December, 2007 conference addressed the issue of limiting the evidence at the

re-trial to ***exclude*** the unchallenged evidence from the first, so that the second

trial would focus only on the resilience question.  This included evidence

relating to the "attaching a suture" limitation (A36982).  But Arthrex ***never***

raised the defense or even suggested it might exist at the December, 2007

conference.  In fact, Arthrex never raised the defense before the district court or

even suggested it might exist for months thereafter, including in its April, 2008

---

[21] The first time Arthrex cites the *On Demand* case in this litigation is in
December of 2008 after the ***second*** trial in its reply brief for its motion for a stay
of the injunction before this Court (A37130; A37136; A37144).

Pre-Trial Brief for the re-trial (A8608-13).  There is not one court document from the time this case was filed in January of 2004 until May of 2008, just before the second trial (which was seven months *after BMC* was decided) in which Arthrex ever even suggested it had a "divided infringement" defense.  It was on this basis that the district court ruled that Arthrex had *waived* its new "divided infringement" defense in the pre-trial conference in May of 2008 (A10802; A10815), and it was not an abuse of discretion for it to do so.

The district court also did not abuse its discretion when it declined to reconsider its waiver decision in connection with Arthrex's oral JMOL motions during the second trial, or when it denied Arthrex's written JMOL motions following the second trial (A29034; A29099-102; A36338-40; A11793; A11822-23; A11868).  Still later, it was not an abuse of discretion when the district court declined to reconsider its waiver ruling when denying Arthrex's summary judgment motion in 2010 in preparation for the third trial (A13362-65).

Here, Arthrex has failed to show any excuse for its delay and completely failed to show that any of the district court's rulings as to waiver of its belated defense were an abuse of discretion of the district court's inherent power to

54

control its trials.  This Court properly found Arthrex's argument on the issue to be "without merit" in the last appeal.

## IV.    Arthrex Is Not Entitled To A Judgment Of Non-Infringement

### A.    The Ninth Circuit Does Not Permit Rule 60(b)(6) To Be Used To Attack The Underlying Judgment

Under 9th Circuit law, an appeal from the denial of a Rule 60(b) motion to reopen judgment is limited to a review of the denial of that motion.  It does ***not*** involve a review of the merits of the underlying judgment, *Floyd v. Laws,* 929 F.2d 1390, 1400 (Fed. Cir. 1991).  Nevertheless, as part of its current appeal, Arthrex attempts not only to address the merits of the underlying judgment, but it argues that this Court should now grant it judgment of non-infringement (*see* Blue Brief, pp. 16, 22, 23, 40, 42).  This request is legally and factually baseless.

#### 1.    The District Court's Construction Of The "Attaching" Limitation Cannot Be Attacked Now

Arthrex's divided infringement argument is predicated on a new claim construction of the "attaching" limitation, as a method step to be performed ***only*** by the surgeons, which is a construction that Arthrex ***never*** asserted at any time during the claim construction phrase in this case or even throughout the first trial.  Indeed, while Arthrex argues that the plain language of the "attaching"

limitation requires it to be a step to be performed ***only*** by the surgeon alone (*see* Blue Brief, pp. 7-8; pp. 36-37), Arthrex's Brief is completely devoid of any record cite to anything relating to such a proposed construction prior to or during the first trial or in the post-trial motions relating to it.  Thus, as a preliminary matter, Arthrex was estopped from raising such a new construction in the first appeal, *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d 683, 694 (Fed. Cir. 2008), and it certainly cannot raise it now in the fourth appeal.

Accordingly, while the claim construction issue is not properly before this Court for the reasons indicated above, this Court should note that the district court and both parties construed the limitation as a structural requirement of a physical connection and not a step for the surgeons, which is entirely consistent with the preferred embodiment of the '557 patent in which the surgeon does ***not*** perform the step of actually attaching a suture to the anchor, but rather uses a suture anchor with the suture already "embedded" (A153, col. 8, lines 50-64; A149, Figs. 15-17).

In fact, the prosecution history confirms that Dr. Hayhurst and the Patent Office understood that "attaching a suture to a member" was not a method step limited to something done by the surgeon.  For example, the Freedland patent, which was the principal reference cited during prosecution, did not disclose the

56

step of "attaching a suture" by the surgeon.  It disclosed a device with a ***pre-attached*** "suture" (thread) (A725; A731, col. 4, line 57 to A732, col. 5, line 3 and lines 24-28; A733, col. 8, lines 59-63; A726, Fig. 2 (*see* thread attachment point 52)).  Nevertheless, the Patent Office rejected what became claim 1 as anticipated by Freedland (A544; A563-4; A614).  Dr. Hayhurst did not disagree as to the "attaching" step.  Instead, he disagreed that the Freedland device "lodged" (due to its "resilience") when pressed into the bone (A617-19; A621-23).[22]  Consequently, it was not error for Smith & Nephew to propose such a construction or for Arthrex to agree to it, and for the district court to give it to the jury (A8094; A8403-4).  But it is impermissible for Arthrex to now raise a claim construction issue to attack the underlining judgment through a Rule 60(b)(6) motion.

---

[22] Arthrex contends that this treatment of the Freedland reference does not matter because "an apparatus disclosed in a prior art reference can anticipate a method step" citing *In re King,* 801 F.2d 1324, 1326-27 (Fed. Cir. 1986) and *Respironics, Inc. v. Invacare Corp.,* 437 Fed. Appx. 917, 920-21 (Fed. Cir. 2011) in support (Blue Brief, p. 38, fn. 14).  Arthrex miscites the cases.  They hold that an apparatus patent anticipates a method claim ***only*** if the apparatus "in its normal and usual operation performs the [claimed] function."  *In re King,* at 1326.  Freedland never discloses performing any such attaching step by the surgeon, and its structure is such that a surgeon would not do so in the normal and usual operation of that device.

### 2. Arthrex Cannot Attack The Judgment By Relying On New Evidence That Was Never Before The Jury

In a further improper attack on the underlying judgment, Arthrex argues it is entitled to a judgment of non-infringement for its SutureTak anchors now based on facts and evidence never heard by any jury. In response to Arthrex's Rule 60(b)(6) motion below, Smith & Nephew pointed out that such a ruling would require a reopening of discovery some eight years after it closed (A36287; A36321-25). Arthrex merely dismisses that possibility by minimizing the amount of infringement that it says would exist under its "divided infringement" defense.

When Arthrex first raised its "divided infringement" defense just prior to the second trial, Smith & Nephew, in its Pre-Trial Brief, not only objected to that new defense but, in the alternative, it set out how, in the event the district court changed the construction of the "attaching" limitation as Arthrex wished, it could prove infringement under that changed construction. This included proof of "control" which would meet the requirement of proving direct infringement by multiple parties (A8592-94; A8598-99). Part of this proof was the evidence that some surgeons do attach suture to the SutureTak anchors following Arthrex's instructions. In fact, discovery revealed that Arthrex developed a technique where a surgeon threads a suture into the eyelet of its SutureTak

58

anchors, which technique Arthrex called "plication" (A13049; A12787).

Further, Arthrex also developed and sold two instruments, the "Plication Viper"

and the "Plication Driver" to perform this technique (A36585; A13044;

A13047), and it published a surgical technique instructing surgeons in the use of

this technique (A13052).

While Arthrex states here that the Plication Driver is "obsolete" (Blue

Brief, p. 39), the evidence still seems to be that Arthrex was promoting the

plication technique from at least 2002 (A36585) through at least 2010 (A13047;

A13049; A13052).[23]

But none of this evidence was put on at trial because the district court did

not change the claim construction for "attaching a suture," and it correctly ruled

the defense had been waived because Arthrex had not timely raised it.  Thus,

even if this Court could consider Arthrex's attack on the underlying judgment,

the result would be reopening of discovery and a retrial of infringement based

on new claim construction and this other evidence never heard by any jury.

After three trials and two appeals, that result could not be correct simply because

---

[23] Arthrex relies on testimony to the contrary from a 2010 ***declaration*** submitted by Arthrex ***after*** the second trial, on which Smith & Nephew never had any discovery (A12348).

Arthrex now faces paying a judgment for its long and very successful

infringement.

## CONCLUSION

Arthrex's appeal should be dismissed.


Dated:  October 3, 2014          /s/ *John M. Skenyon*
                                 John M. Skenyon, Esq.
                                 FISH & RICHARDSON P.C.
                                 One Marina Park Drive
                                 Boston, MA  02210-1878

                                 Counsel for Plaintiffs-Appellees

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

10/3/14

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
   (by email or CM/ECF)

| John M. Skenyon | /s/ John M. Skenyon |
|---|---|
| Name of Counsel | Signature of Counsel |

Law Firm — Fish & Richardson P.C.

Address — One Marina Park Drive

City, State, ZIP — Boston, MA  02110

Telephone Number — (617) 542-5070

FAX Number — (617) 542-8906

E-mail Address — skenyon@fr.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

**CERTIFICATE OF COMPLIANCE**

The Plaintiffs-Appellees' Main Brief is submitted in accordance with Rule 32(a)7(B)i of the Federal Rules of Appellate Procedure.  The Brief contains 13,498 words, as determined by Microsoft Word.


Dated:  October 3, 2014          By /s/ *John M. Skenyon*
                                 John M. Skenyon, Esq.
                                 FISH & RICHARDSON P.C.
                                 One Marina Park Drive
                                 Boston, MA  02210-1878

                                 Counsel for Plaintiffs-Appellants